1

```
 1                    UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
 2                          ORLANDO DIVISION

 3    - - - - - - - - - - - - - - - - X
      UNITED STATES OF AMERICA,        :
 4                                     :
                                       : Case No.:
 5          Plaintiff,                 : 6:22-cr-98-PGB-DCI
                                       :
 6    vs.                              :
                                       : Orlando, Florida
 7    PRESTON PERCYVILLE CRESSER,      : July 8, 2022
                                       : 10:08 a.m.
 8                                     :
            Defendant.                 :
 9    - - - - - - - - - - - - - - - - X

10                   TRANSCRIPT OF DETENTION HEARING
                   BEFORE THE HONORABLE DANIEL C. IRICK
11                   UNITED STATES MAGISTRATE JUDGE

12

13    APPEARANCES:

14    Counsel for Plaintiff:      Shannon Laurie
                                  U.S. Attorney's Office
15                                2110 First Street, Suite 3-137
                                  Fort Myers, FL 33953
16
      Counsel for Defendant:      Karla M. Reyes
17                                Federal Public Defender's Office
                                  201 S. Orange Ave., Suite 300
18                                Orlando, FL 32801-3417

19

20
      Proceedings recorded by digital recording.
21    Transcript produced by computer-aided transcription.

22
      Court Reporter:  Suzanne L. Trimble, CCR, CRR, RPR
23                     Federal Official Court Reporter
                       401 West Central Boulevard, Suite 4600
24                     Orlando, Florida 32801
                       e-mail: trimblecourtreporter@gmail.com
25
```

T A B L E   O F   C O N T E N T S

PROCEEDINGS                                                        PAGE

                            July 8, 2022

TESTIMONY

TAFFORD UBSON, called by Defense
  Direct Examination By Ms. Reyes...................... 7
  Cross-Examination By Ms. Laurie...................... 12

OTHER

Government's Proffer of Evidence By Ms. Laurie.......... 4
Government's Argument Re: Detention by Ms. Laurie....... 16
Defense Argument Re: Detention By Ms. Reyes............. 17
Colloquy Re: Extending Hearing......................... 22

```
 1                   P R O C E E D I N G S

 2            THE COURTROOM DEPUTY:  Case No. 6:22-cr-98-PGB-DCI,

 3   United States of America v. Preston Percyville Cresser.

 4       Counsel, please enter your appearances for the record.

 5            MS. LAURIE:  Good morning, Your Honor.  Shannon Laurie

 6   appearing on behalf of the United States, along with FBI Agent

 7   Harney.

 8            MS. REYES:  Good morning, Your Honor.  Assistant

 9   Federal Public Defender Karla Reyes on behalf of Mr. Cresser.

10   He's seated to my right.

11            THE COURT:  Good morning, everyone.  It's my

12   understanding we're here for a detention hearing in this case

13   that was continued from last week before Judge Kidd.  Is that

14   right?

15            MS. LAURIE:  That's correct, Your Honor.

16            THE COURT:  Is the Government ready to proceed?

17            MS. LAURIE:  Yes, Your Honor.  And we are seeking

18   detention in this case, and there is a presumption for detention

19   under 18 United States Code, Section 3142(e)(3), based on the

20   violation in this case.  There are minor victims involved.

21            THE COURT:  All right.  Understood.

22       Is the defense ready to proceed?

23            MS. REYES:  Yes, Your Honor.

24            THE COURT:  All right.  I will ask each side to

25   present all of the evidence.  The Government present all of the
```

4

1    evidence you have; the defense present your evidence; and then

2    we'll come back to argument afterwards.

3            MS. LAURIE:  Yes, Your Honor.

4            THE COURT:  So you can go on ahead.

5            MS. LAURIE:  Your Honor, this defendant has been

6    charged with four counts in the indictment:  Enticement of a

7    minor, production of child pornography, distribution of child

8    pornography, and possession of child pornography.  These charges

9    carry a sentence of a 15-year min/mand up to life.

10       The Government would assert that the defendant is a danger

11   to the community by clear and convincing evidence.  We would ask

12   this Court to consider under 3142(g)(1) and (2) the nature and

13   circumstances of the offense and the weight of the evidence.

14       Your Honor, the Government would like to proceed by proffer

15   regarding the allegations in this case.  And beginning in 2020

16   through January of 2022 the defendant engaged in a sextorsion

17   scheme in which he coerced numerous female victims to create and

18   send him electronic images of themselves engaged in sexually

19   explicit conduct.  The evidence shows that the defendant would

20   engage the minor victims on social media platforms and form a

21   pseudo online dating relationship with them.  He would entice

22   them to send sexually explicit photographs or videos, and after

23   the minor would comply, the defendant would demand that the

24   minor produce and send him additional images.  If the victim did

25   not want to obey, he would threaten to send the previous images

1   to the victim's family or post them on social media.  The minor

2   victim, out of fear, would submit oftentimes to the defendant's

3   demands.  In one incident, he would literally count down and

4   give the victim ten seconds to comply with his demands or else

5   he would post on social media.

6       Despite several of the victims blocking him on social

7   media, the defendant would continue to contact these victims by

8   creating new social media accounts and demand more sexually

9   explicit images.  He would then make collages of these victims

10  and send the image to them, threatening them, and posting them

11  on social media.

12      The weight of the evidence in this case is great, Your

13  Honor.  The phone number used to message these minor victims is

14  registered to the defendant.  The Instagram account used to

15  contact at least one of minor victims is subscribed to the

16  defendant.

17      There was a search warrant obtained for the defendant's

18  phones, and it was discovered that he had numerous images and

19  photos and videos of minor teenage victims performing sexual

20  acts on his phone.  The defendant would oftentimes FaceTime and

21  live record these interactions with the victims, and you can see

22  the defendant's face on the live stream recordings.

23      The FBI has been able to identify five minor victims in

24  this case, one as young as 13 years old.  However, there are

25  several other victims that the FBI is still trying to identify.

1    Your Honor, looking at this defendant's prior arrests,
2    although he has no prior criminal convictions, in 2018 he did
3    have a felony battery DV and a charge for obstructing justice.
4        In 2021, again, these charges were nolle prossed, but he
5    was arrested for carrying a concealed weapon and a weapon
6    offense.
7        Looking under subsection (4), the nature and seriousness of
8    the person to any person in the community and would pose a
9    danger to the release, there is multiple victims involved in
10    this case.  They're all across the United States.  He used
11    several types of social media to reach out to these teenagers,
12    including Facebook, Instagram, and Snapchat.
13        Your Honor, would you like me to reserve my argument?
14            THE COURT:  Yeah, you can.  I'm going to let the
15    defense present their evidence and then you can take that into
16    consideration when you argue as well.
17            MS. LAURIE:  Yes, Your Honor.  So for those reasons we
18    are seeking detention.
19            THE COURT:  Evidence from the defense.
20            MS. REYES:  Yes, Your Honor.  Defense calls Tafford
21    Ubson.
22            THE COURT:  Sir, if you could come forward to the
23    witness box here and remain standing to be sworn.
24            THE COURTROOM DEPUTY:  Please raise your right hand.
25            (TAFFORD UBSON, called by Defense, is sworn.)

*TAFFORD UBSON – Direct Examination by Ms. Reyes*                    7

1              THE DEFENDANT:  I do.

2              THE COURT:  Please state and spell your name for the

3     record.

4              THE WITNESS:  Tafford Ubson, T-a-f-f-o-r-d, U-b-s-o-n.

5              THE COURTROOM DEPUTY:  Thank you.

6              THE COURT:  You can have a seat, sir.  Thank you.

7         Yeah, go ahead.

8                          DIRECT EXAMINATION

9     BY MS. REYES:

10    **Q**    Mr. Ubson, if you could just move the microphone a little

11    bit closer to you.  All right.  Perfect.

12         How do you know Mr. Cresser?

13    **A**    He's my stepson.

14    **Q**    Approximately how long have you known him?

15    **A**    Going on three years.

16    **Q**    Are you married to his mother?

17    **A**    Yes.  We're engaged.

18    **Q**    And where do you live?

19    **A**    5263 Laurel Parkway and Rosemont.

20    **Q**    And who do you live there with?

21    **A**    My wife and his brothers and his siblings.

22    **Q**    And how old are his brothers and sisters?

23    **A**    Youngest is ten, and then you've got a 14-year-old and a

24    16-year-old.

25    **Q**    And who's present to today in support of Mr. Cresser?

*TAFFORD UBSON - Direct Examination by Ms. Reyes*                    8

1   **A**    All of -- his mother; sister, Trinity; and sister,

2   Precious.

3   **Q**    Can you tell the Court how many bedrooms and bathrooms you

4   have?

5   **A**    Three bedrooms, two bathrooms.

6   **Q**    Would he be welcome to live with you guys?

7   **A**    Absolutely.

8   **Q**    Are you generally familiar with the allegations in this

9   case?

10  **A**    Yes, I am.

11  **Q**    And has that changed your opinion as to Mr. Cresser's

12  character?

13  **A**    No.

14  **Q**    What is your opinion of his character?

15  **A**    He's since my, you know, relation with him, he's been a

16  good kid.  Everybody, you know, as adolescent, you know, they're

17  not perfect, but he's a good kid at heart.

18  **Q**    Do you work?

19  **A**    Yes.

20  **Q**    Where do you work?

21  **A**    Old North Bridge Company.

22  **Q**    And how long have you worked there?

23  **A**    Just recently started this job.  It's the same line I've

24  been doing 38 years, maintenance technician.

25  **Q**    Did you previously work at New York International Bread

1    Company?

2    **A**    Yes.

3    **Q**    And was Mr. Cresser -- were you able to get Mr. Cresser a

4    job there?

5    **A**    I absolutely did, yes.

6    **Q**    And how long did he work there with you?

7    **A**    A little over a year.  I would say about a year, yeah.

8    **Q**    And did I -- I have to ask.  Do you have any prior criminal

9    history?

10   **A**    No.

11   **Q**    Would you be willing to serve as a third-party custodian

12   for Mr. Cresser?

13   **A**    Yes.

14   **Q**    Do you realize that would require you to assume legal

15   responsibility for him to follow any conditions that the Court

16   may set?

17   **A**    Absolutely.

18   **Q**    Do you believe that he would respect your authority?

19   **A**    Oh, yeah, absolutely.

20   **Q**    Is Mr. Cresser a father himself?

21   **A**    Yes.

22   **Q**    And how would you characterize his relationship with his

23   daughter?

24   **A**    Normal, you know, father-daughter relationship.  He loves

25   her.

*TAFFORD UBSON - Direct Examination by Ms. Reyes*                    10

1   **Q**    In the time that you've known him, did he ever appear to

2   you to be like a child predator?

3              THE COURT:  Can I just -- before you answer that

4   question, I just want to -- I have a letter.  Do you have the

5   supplemental letter from pretrial services?

6              MS. REYES:  No, Your Honor.

7              THE COURT:  Okay.  Just before you ask that question,

8   why don't we give you a copy of that.

9              MS. REYES:  Okay.  I asked pretrial beforehand, and he

10  said he had nothing to add from the original pretrial report.

11             THE COURT:  I immediately before this hearing received

12  an additional letter, right before I walked out.  That's why I

13  was a couple of minutes late.  So I want you to have that letter

14  before you ask that question.

15             MS. REYES:  Okay.

16             MS. LAURIE:  And, Your Honor, I haven't been able to

17  review that letter as well.

18             THE COURT:  Okay.  Let's do that.  Do you have a copy?

19             PRETRIAL SERVICES:  Your Honor, I don't have a copy.

20             THE COURT:  Can we print it out right now?

21        Ms. Rodriguez, why don't you print it out.

22             PRETRIAL SERVICES:  Your Honor, I apologize.  I

23  thought [unintelligible audio].

24             THE COURT:  You know, I think that that might be a

25  fine assumption, but based upon the line of inquiry, I think it

1  appropriate that Ms. Reyes have the ability to review that

2  letter first.

3          PRETRIAL SERVICES:  [Unintelligible audio].

4          THE COURT:  And I would note, too, this is not

5  addressed to me.  It was addressed to Judge Kidd.  So that may

6  also be why I had some delay in getting it.

7      I'm not saying you shouldn't ask the question or you can't

8  answer or anything.  I just want you to have this first.  And if

9  you would like to continue, you're more than welcome to.

10  BY MS. REYES:

11  **Q**    Is there anything else that you know about Mr. Cresser in

12  the time that you've been with his mother that you believe is

13  important for the Court to know?

14  **A**    As far as -- I don't understand.

15  **Q**    Any history, characteristics, drug use, mental health

16  issues?

17  **A**    Never drug use, never.  It seems -- to my knowledge,

18  nothing out of the basic ordinary, the normal -- you know, I

19  don't --

20  **Q**    Okay.

21  **A**    I'm trying to follow you.

22          MS. REYES:  Nothing further, Your Honor.

23          THE COURT:  All right.  Cross-examination.

24          MS. LAURIE:  Yes, Your Honor.

25  *////*

1                       CROSS-EXAMINATION

2    BY MS. LAURIE:

3    **Q**     Good morning, sir.

4    **A**     Good morning.

5    **Q**     So it's my understanding there's five people that live in

6    the household --

7    **A**     Yes.

8    **Q**     -- currently?  And that is three children all under the age

9    of 18?

10   **A**     Yes.

11   **Q**     Okay.  And then you said a ten-year-old male or female?

12   **A**     Male.

13   **Q**     And then the 14-year-old?

14   **A**     Male.

15   **Q**     And then the 16-year-old?

16   **A**     Female.

17   **Q**     Okay.  And is it Dwana Cresser, is that who also lives with

18   you?

19   **A**     Yes.

20   **Q**     And that's your wife?

21   **A**     Yes.

22   **Q**     Okay.  And are you aware that she's addressed concerns

23   regarding Mr. Cresser and him liking young children?

24   **A**     Am I aware of what now?

25   **Q**     Are you aware of your wife expressing concern of the

1   defendant, Mr. Cresser, liking young children and maybe in a

2   sexual manner?

3   **A**     No.

4   **Q**     She's never expressed concern to you regarding that?

5   **A**     No.

6   **Q**     Okay.  Do your children have phones?

7   **A**     Yes.

8   **Q**     Are they smart phones, like an iPhone?

9   **A**     I don't know.  They're just -- I don't know.

10   **Q**     Like an iPhone or like an Android?

11   **A**     I think, yeah.

12   **Q**     Okay.  Do you know if they have social media?

13   **A**     Yes.

14   **Q**     Okay.  Do you know what kind of social media they have?

15   No?

16   **A**     No.

17   **Q**     Like Facebook?

18   **A**     I think so, yeah.

19   **Q**     Do you know --

20   **A**     Messenger.

21   **Q**     -- if they have Snapchat?

22   **A**     I don't even know what that is, to be honest.

23   **Q**     Okay.  So but they do have social media --

24   **A**     Yes.

25   **Q**     -- on their phone?

1   **A**     Mm-hm.

2   **Q**     Okay.  And do you own an iPhone or Android?

3   **A**     Mm-hm.

4   **Q**     And does your wife own a smartphone or an Android?

5   **A**     Android, yes.

6   **Q**     And does your home have Internet?

7   **A**     Yes.

8   **Q**     Do you know if your home has a smart TV?  For example, you

9   can get Netflix or --

10  **A**     Oh, yeah, yeah.

11  **Q**     Okay.  So you do have a smart TV as well in your home?

12  **A**     Mm-hm.

13  **Q**     Do you know how many TVs you have in your home that have

14  that capability?

15  **A**     Two.

16  **Q**     Two.  And does your wife -- does she work?

17  **A**     No, not currently.

18  **Q**     So she's at home?

19  **A**     Mm-hm.

20  **Q**     And what about your children?  Since they're out of school,

21  do they just stay at home?

22  **A**     Yes.

23  **Q**     Okay.  So they're at home most of the time?

24  **A**     We're in summer right now, yeah.

25  **Q**     And what are your work hours?

1   **A**    Subcontractor, my hours vary.

2   **Q**    Okay.  So generally, from Monday through Sunday, how many

3   days do you work?

4   **A**    Approximately four.

5   **Q**    And when you work those four days, how long do you work

6   for?

7   **A**    Anywhere from eight to ten hours.

8   **Q**    Eight to ten hours.

9         MS. LAURIE:  Okay.  Thank you.  No further questions.

10        THE COURT:  Any redirect?

11        MS. REYES:  No, Your Honor.

12        THE COURT:  All right.  Thank you.  You can step down.

13        I just want to note for the record that there was a few

14   times when the witness said "mm-hm," and I probably should have

15   corrected it at the time, but every time he did that, he was

16   answering in the affirmative.  He was nodding and I saw that.

17   So I just want to make that clear for the record.

18        I just want to state for the record that, frankly, I

19   assumed, probably as you all would, that you had everything

20   pretrial services had and that, Ms. Reyes, you had that.  Both

21   sides were telling me they did not have it.  Pretrial services

22   explains that he thought they did, and maybe there's some kind

23   of miscommunication here.

24        The only reason it jumped out to me, Ms. Reyes, is because

25   of your line of questioning it appeared to me that you had not

1    seen this.  So that's why I stopped you.  That's all I wanted to

2    do is make sure you had this.  So to the extent you want to make

3    any further line of inquiry, you know, you're welcome to.  In

4    addition, I just want to make sure the record is clear on kind

5    of what happened here.

6         Anything else you would like to comment on, that or any

7    other evidence, Ms. Reyes?

8              MS. REYES:  No, Your Honor.

9              THE COURT:  Okay.  And I am happy to hear argument

10   from the Government.

11             MS. LAURIE:  Yes, Your Honor.

12        Again, Your Honor, defense has the initial burden to show

13   that the defendant is not a danger to the community or a flight

14   risk.  The Government would assert that there has been no

15   evidence from the defense to overcome the presumption that the

16   defendant is not a danger to the community.

17        Your Honor, we heard from the witness where this defendant

18   would be released to.  There are minor victims living in the

19   home.  There is also Internet use, along with the entire family

20   having smart phones and also smart TVs in the home.

21        This offense is wholly related and facilitated by the

22   defendant to commit these crimes through the use of the

23   Internet.  The defendant would have the capability to use any

24   electronic device or smart TV to log back onto any social media

25   account and continue to threaten and harass the victims or to

1   find new ones.  There would be no conditions of release that

2   would be able to prevent this.

3        We would assert for those reasons the defendant is a danger

4   to the community, especially to young teenage girls through the

5   Internet, and we believe that we have met our burden by clear

6   and convincing evidence, and we would ask that the defendant be

7   detained.

8             THE COURT:  The defense.

9             MS. REYES:  Judge, at the outset, I would note that

10  the prosecution is incorrect with her following statement of the

11  law, that we have the burden and we have failed to prove that

12  he's not a danger and that he's not a flight risk.  As the Court

13  knows from the Bail Reform Act, 18 United States Code, 3142(g)

14  and the entire subsections (a) through (j), it's the

15  Government's ultimate burden of persuasion on both of those

16  prongs.  For terrorism, drug, gun, minor victim, a bunch of

17  exceptions, we have the initial burden of production.  The

18  burden of persuasion always stays with Ms. Laurie.

19       Through Mr. Ubson's testimony that was unrebutted.  He

20  testified that he's engaged to my client's mother, Dwana

21  Cresser, who is present here, as acknowledged by Mr. Ubson.

22       If you can just raise your hand.

23       They live together in a three bedroom, two bath house.

24       Also present today in support are Trinity Charles.

25       If you could raise your hand.

1          And Precious Dent, if you could raise your hand.

2          The factual proffer by Ms. Laurie is completely incorrect.

3    I object to her entire factual proffer, and just to note, the

4    agent is -- one of the agents involved in this case is here.

5    This case was continued over a week ago because there was a

6    COVID exposure, and the marshals turned around while he was

7    being transported to the courthouse.  So the Government has had

8    over a week to prepare for this case, and she decided to proceed

9    by proffer.

10          I don't have any discovery from her.  I did a Chapter 119

11   request to the state attorney's office.  This case originated

12   from state court, and I am still going through it.  But FBI

13   Special Agent Kevin Kaufman had a two-and-a-half-hour interview

14   with my client on January 14, 2022.  So even though he was in

15   state custody in this case, the Government has been involved

16   since the very beginning.

17          That being said, this is a very serious offense, Your

18   Honor, and the victim -- Ms. Laurie referred to several victims.

19   I'm referring now to the victims in the indictment.  The main

20   victim, Your Honor, is not a minor.  Would the Court still

21   prefer or ask me to refer to the victim by her initials?

22              THE COURT:  So you're saying in Count 1, Minor

23   Victim-1 is not currently a minor?  Is that what you are saying?

24   I just want to understand what the request is.

25              MS. REYES:  Yes.  If you notice, he's being charged

1    also under 18 U.S.C., Section 2, as a principal.

2              THE COURT:  Mm-hm.

3         MS. REYES:  So I would say that there are at least

4    three victims in this case.  Count 1, he used an adult who has

5    emotional issues and mental health issues to molest a minor

6    victim, and he did this on FaceTime.

7              THE COURT:  So victim -- I just --

8         MS. REYES:  So to answer your question -- I'm sorry,

9    Your Honor --

10             THE COURT:  Yeah.

11        MS. REYES:  -- Minor Victim-1 is a victim --

12             THE COURT:  Okay.

13        MS. REYES:  -- is a minor.

14             THE COURT:  So there's another -- you're saying

15   there's another uncharged person who was involved in the

16   offense.

17        MS. REYES:  He's been charged as a principal because I

18   believe it's the Government's theory that he forced this adult

19   to commit the offenses against the three minor victims.

20             THE COURT:  Okay.  Is there a --

21        MS. LAURIE:  Your Honor, may I be heard regarding that

22   matter?

23             THE COURT:  It's her argument.  If there's something

24   to be addressed in particular, I'll give you an opportunity to

25   rebut at the end.

1          MS. LAURIE:  All right.

2          THE COURT:  Okay.

3          MS. REYES:  Okay.  So Ms. Lazaria Tyce (phonetic

4    spelling) is 20 years old, and she has two younger sisters.  I

5    will refer to those by their last name -- or by their initials,

6    but --

7          THE COURT:  Okay.  So I just want to understand, just

8    so I understand what's happening here.  The person you're

9    referring to, if you could use their name, was Ms. Tyce --

10         MS. REYES:  Yes.

11         THE COURT:  -- whose name you just used.

12         MS. REYES:  Yes.

13         THE COURT:  But she's just an uncharged adult.  She's

14   not a minor in relation to this case, and you're going to

15   explain why she's involved.  Is that --

16         MS. REYES:  Yes, Your Honor.

17         THE COURT:  Okay.  That's fine.

18         MS. REYES:  Okay.  Her sister ZK is a six-year-old and

19   AF is an 11-year-old.  They're both half sisters of Ms. Tyce.

20   Ms. Tyce molested them at the direction of Mr. Cresser, and

21   that's how the Government is indicting him under 18 U.S.C. 2, as

22   a principle.

23         THE COURT:  For Count 1 and 2?

24         MS. REYES:  For Count 1 and 2 and, I believe, 3.

25         THE COURT:  You know, I just --

1      MS. REYES:  Yes.  3 would not be a minor victim and

2   then 4 wouldn't involve a minor victim.

3      THE COURT:  Are you -- I just want to make sure, and

4   I'm sure I'll get the Government's position too.  Are you sure

5   on what you're saying here, or are you just assuming, because

6   the Government told me the youngest minor victim was 13, and I

7   think if there were minor victims of six and 11, they would have

8   told me that.

9      MS. REYES:  Well, I think that the Government is

10  telling you things that I'm not privy.  So that's why --

11     THE COURT:  That's why I'm asking.  Are you sure that

12  that's the charges in Counts 1, 2, and 3 -- or 1 and 2?

13     MS. REYES:  I guess I don't have a statement of

14  particulars, Your Honor, so I'm not sure.

15     THE COURT:  Okay.  I just -- yeah.  I just don't know.

16  I mean, I'm sure I'll hear from them in rebuttal if that is not

17  right, but I am happy to hear whatever argument you have.  I

18  just don't know if that's --

19     MS. REYES:  Okay.  I have reviewed hundreds of pages

20  of discovery that's been provided to me --

21     THE COURT:  Yeah.

22     MS. REYES:  -- pursuant to a public records request.

23     THE COURT:  Okay.

24     MS. REYES:  And I've listened to body camera videos

25  and my client's interview.  So that is -- that is my

1    understanding.  So when she says there's five minor victims, I

2    don't know what she's talking about.  She called this a sex

3    extortion scheme.  I don't know what she's talking about.

4         So we're here today on production on Count 1, enticement on

5    Count 2, receipt on Count 3, and possession -- or distribution

6    on Count 3 --

7              THE COURT:  Mm-hm.

8              MS. REYES:  -- and possession on Count 4.

9         So the question is, is this a serious offense according to

10   3142(g)(1)?  Of course it is.

11        The second factor, Your Honor, is the weight of the

12   evidence.  I don't have the discovery from the Government.  I

13   have been able to get some discovery on my own due diligence.

14   It appears to be strong.

15        As we go to the third factor, the history and the

16   characteristics, Mr. Cresser is --

17             THE COURT:  I want to say this, Ms. Reyes, and I

18   apologize for interrupting you.  I want to say this because it

19   sounds to me like there's some significant gaps in your

20   knowledge of the case, just based on your what you're saying.  I

21   would just note that, you know, I pulled the criminal scheduling

22   order in this case which was issued on June 29th.  Pursuant to

23   that order, the Government has to provide you with discovery in

24   less than a week, right?  It's like four or five days away.

25             So if you want an extension of this hearing in order to get

23

1    discovery and if that would help your argument, I'm happy to

2    give that you to because I'm not sure if that's what you're

3    asking for, but we're close to that time anyway.  So I just want

4    to put that out there.  If you don't, that's fine.  But I mean,

5    to the extent you're saying that you don't have discovery and

6    you want it, you're going to get it in, like, four or five days

7    anyway.  So I just want to kind of put that out there for you.

8               MS. REYES:  Yes, Your Honor.  I also have an

9    appointment with Special Agent Kaufman next week to review the

10   evidence.  So with the Court's --

11              THE COURT:  Would you like -- I mean, is that

12   something you would like?

13              MS. REYES:  Yes.  I would like that, Your Honor.

14              THE COURT:  Yeah.  I don't have a problem with that.

15   I mean, you can always ask for an extension from me.  I'm happy

16   to grant it, I think, as long as it's reasonable, and I think

17   that's reasonable.

18       I mean, does the Government have an objection to that?

19              MS. LAURIE:  No, Your Honor.

20              THE COURT:  Okay.  I think that's completely

21   reasonable.  When do you think you would like to set this

22   because I can set this at your convenience.

23              MS. REYES:  May I have a brief moment, Your Honor?

24              THE COURT:  Yeah.  Absolutely.

25              MS. REYES:  Your Honor, would the Court be available

24

1   the week of the 18th?

2           THE COURT:  Absolutely, yeah.  And I don't have

3   anything in particular going on that week.  So if there's a

4   particular day that works better for you.

5           MS. REYES:  I'm duty on Monday.  Would Tuesday

6   the 19th work, Your Honor?

7           THE COURT:  Tuesday the 19th, yes.  That does work.

8   So we'll set that.  We'll do a notice of hearing for Tuesday

9   the 19th.  Yeah.

10          MS. LAURIE:  Just for my clarification, Your Honor,

11  are we only proceeding on argument, the argument portion?

12          THE COURT:  I mean, I think so, unless you all want to

13  present additional evidence.

14      I mean, Ms. Reyes, if you would like to present additional

15  evidence, I think I should give the Government the opportunity

16  to do that as well.

17          MS. REYES:  Yes, Your Honor.

18          THE COURT:  So I'm happy to open it up if both sides

19  agree.  If there's some kind of disagreement, then I'll decide

20  that.  But I think that the evidence is closed.  So if you all

21  agree to reopen it, that's fine.  I think Ms. Reyes, if she asks

22  me to reopen it because she learned something new in discovery,

23  I'll probably grant that.  And if I grant that, then I'll let

24  you put in additional evidence too.

25          MS. LAURIE:  Yes, Your Honor.

25

1          THE COURT:  I just want to give a prelude of that to

2    you all.  We'll set, you know, at least an hour for this.  We'll

3    have plenty of time, and more if needed, but --

4          MS. LAURIE:  Okay.  Thank you.

5          THE COURT:  -- we'll go from there.

6          MS. REYES:  Thank you, Your Honor.

7          THE COURT:  All right.  Then we'll be in recess.

8      In the meantime, the defendant will be remanded to the

9    custody of the United States Marshal Service pending further

10   proceedings in this case.

11   (WHEREUPON, this matter was concluded at 10:36 a.m.)

12                            *   *   *

13                   CERTIFICATE OF REPORTER

14
     I certify that the foregoing is a correct transcript of the
15   record of proceedings in the above-entitled matter.

16
      /s/ Suzanne L. Trimble_____            7/25/22
17    Suzanne L. Trimble, CCR, CRR, RPR            Date
      Official Court Reporter
18

19

20

21

22

23

24

25